JOHN KUNZLER, *ET AL.*, PLAINTIFFS-APPELLANTS, v.
A. RON HOFFMAN, *ET AL.*, DEFENDANTS-RESPONDENTS.

Argued October 10, 1966—Decided December 5, 1966.

278

*Mr. Garrell M. Heher* argued the cause for appellants (*Messrs. Smith, Stratton, Wise & Heher,* attorneys).

*Mr. Ernest A. Barbaris* argued the cause for respondents (*Messrs. Gallanter & Levy,* attorneys).

The opinion of the court was delivered by
Proctor, J. This is a zoning variance case. The Township Committee of the Township of Washington, Morris County,

on September 9, 1964 granted a variance to A. Ron Hoffman, M.D., pursuant to a recommendation of the Board of Adjustment, under *N. J. S. A.* 40:55–39(d). On the suit of Township residents challenging the variance the Law Division sustained the grant, and this judgment was affirmed by the Apellate Division. We granted certification. 47 *N. J.* 86 (1966).

The Township of Washington is in the southwest corner of Morris County, and according to the census of 1960 its population is 3,330. Of the total land the major portion is used for farming, some one-third is undeveloped, around 5% is residential, and about 1% is commercial and industrial.

On May 27, 1964 Dr. Hoffman applied to the Board of Adjustment of the Township for a variance to build a hospital for emotionally disturbed adults and children. He held an option to purchase 40 acres situated almost in the center of a 260-acre tract owned by James and Viola Duffy. The hospital was to be privately owned and operated for profit. The 40 acres were in an area designated R-1 by the zoning ordinance. Permitted uses in R-1 include: detached single family dwellings, farms, professional offices in residences, parks and playgrounds, public buildings, public and private schools, churches, kennels (maximum 10 dogs), boarding houses (maximum 6 guests), nursing homes (maximum 10 patients), undertaking establishments, and under paragraph 1–6: "Eleemosynary, charitable and philanthropic institutions but not including hospitals exclusively for the confinement of contagious diseases or for the insane." Dr. Hoffman sought a variance for his hospital because it was not one of the uses expressly permitted in the R-1 zone.

At the meeting of the Board of Adjustment on June 16, 1964 counsel for Dr. Hoffman represented that there were only two private hospitals for emotionally disturbed persons in New Jersey, namely, Fair Oaks at Summit and Carrier Clinic at Belle Mead. He said that there was an urgent need for additional hospitals of this type because both public and private hospitals for such persons were greatly overcrowded.

The proposed hospital would be operated by a private corporation known as River Mount, Inc.[1] It would cost about one million dollars, be fire resistant, provide its own sewerage and water, and would have grounds attractively landscaped. The applicant represented that plans for the proposed hospital had been submitted to the New Jersey Department of Institutions and Agencies and exceeded the State's minimum specifications. The hospital would have a capacity of 90 patients and would employ about 60 persons exclusive of kitchen help and outside laborers. The patients would be emotionally disturbed persons who required an average of three to four weeks of treatment; those needing more extended treatment would be referred to other institutions. Alcoholics and drug addicts would not be admitted unless taken for emotional problems which could be helped by the hospital's regular treatment. Patients would be allowed the freedom of the grounds only within a few days of their release. (At oral argument before this Court counsel for Dr. Hoffman stipulated that the hospital would not accept patients requiring physical restraint.)

Dr. Hahn, of the Division of Mental Health and Hospitals, New Jersey Department of Institutions and Agencies, confirmed the applicant's representations as to the public benefit of the proposed hospital, and testified that there was an urgent need for additional hospitals of this nature. Dr. Hahn further testified that in his experience with a mental hospital located in a choice residential neighborhood the initial opposition of the community changed as the actual operation of the hospital became better known.

Township residents also appeared and spoke at this meeting. Of the 40 or 50 then present a majority opposed the

---

[1] The application for variance was brought by Dr. Hoffman because he held the option on the site for the proposed hospital. However, if approved, the hospital would be built, owned, and operated by River Mount, Inc., whose officers include six physicians—four of whom are general practitioners and the other two are psychiatrists. It is also planned to add a businessman and a banker as corporate officers.

variance claiming that the presence of such a hospital would: (1) create a danger to adjoining residents, (2) depreciate the value of the surrounding property, and (3) cause additional municipal costs which would more than offset additional tax revenues. A petition containing the signatures of 119 residents opposing the variance was presented to the board. However, the only resident who was a near neighbor (except for the sellers who retained some 220 adjoining acres) said he would prefer to have the proposed hospital next to him than to see the area filled with houses.

The board reserved its decision until its next regular meeting on July 7.

At the meeting of July 7 several members of the board reported on their visits to the proposed hospital site, the Fair Oaks Clinic in Summit, and the Carrier Clinic in Belle Mead. The on-site inspection confirmed the applicant's representations as to the location and surrounding property of the proposed hospital. Observations made on the visits to the two clinics tended to show that they had not had any adverse effect upon neighborhood property values. Nearby the Fair Oaks Clinic, which was in an older residential area, some new houses of substantial size had been built. A check with the police in the vicinity of the clinics showed no record of incidents involving patients and residents.

Interested persons were given the opportunity to express their views, and several residents who had spoken at the first meeting again voiced objections. Letters were received from other objecting residents not present at the meeting. No grounds other than those advanced at the first meeting for denying the grant were presented.

At the end of this meeting the board passed a resolution incorporating findings that: (1) there was an urgent need for private hospitals of the type proposed and that the proposed hospital would be of "substantial benefit to the public and particularly to Washington Township and the surrounding communities"; and (2) the proposed hospital "does not pose a real or substantial threat to the life, person or property of

adjoining residences" and "would not substantially impair the intent and purpose of the zoning plan and zoning ordinance." It also found that the proposed use would increase tax revenues and employment in the Township. The board concluded that the foregoing findings constituted special reasons under *N. J. S. A.* 40:55–39(d). The board then recommended the grant of the variance on the following conditions:

"1. If the option on the property now held by Dr. A. Ron Hoffman is not exercised, the variance will be terminated.

2. If construction of the hospital is not started before July 7, 1965, the variance will terminate.

3. That all other requirements of our zoning ordinance with respect to Industrial property will be satisfied.

4. That the Hospital will provide, at its own expense, adequate water and sewage facilities and such sewage facilities will be sufficient to avoid pollution of the river and underground water supplies of adjoining properties.

5. That the land surrounding the building where patients are permitted to roam will be landscaped by needed lawns and shrubs and the borders screened by suitable trees and shrubs.

6. That the housing structures will be of fireproof construction and that the building, furnishings and equipment installed therein will meet or exceed the minimum requirements set by the State of New Jersey in such cases.

7. That at least one medical doctor qualified to treat emotionally disturbed patients will remain in residence at the Hospital and be on the premises at all times."

As above stated a mental hospital operated for profit is not permitted by the zoning ordinance and so a variance was sought under *N. J. S. A.* 40:55–39(d). This statute requires that two critical findings must be made by the Board of Adjustment before a structure or use variance can be recommended: (1) that the variance "can be granted without substantial detriment to the public good and will not substantially impair the intent and purpose of the zone plan and zoning ordinance"; and (2) that "special reasons" exist for the granting of such a variance.

Plaintiffs contend that the "negative criteria" of the statute were not met because: (1) the zoning ordinance itself would

bar as a detriment a charitable institution from building such a hospital "assuming the proposed hospital could be regarded as a hospital exclusively for the insane"; and (2) no real estate expert testified that the proposed hospital would not cause substantial detriment to the zoning plan and to the value of adjoining property.

■■ The zoning ordinance in paragraph 1–6 permits: "Eleemosynary, charitable and philanthropic institutions but not including hospitals exclusively for the confinement of contagious diseases or for the insane." Under this provision a charitable institution used exclusively for the confinement of the insane would not be permitted. But we think that the fair meaning of this exclusion refers to institutions where persons with severe or incurable mental illnesses are confined, and not to a clinic-type hospital where, as here, the patients have mental disturbances of a milder nature requiring only short periods of treatment. Thus a charitable institution would be authorized under the ordinance to build and operate a hospital such as the one proposed here. From the standpoint of the negative criteria the proposed private hospital is no different from a charitable institution having the same physical appearance and functions. See *Andrews v. Ocean Twp. Board of Adjustment,* 30 *N. J.* 245, 250 (1959).

■ Although the testimony of a real estate expert is often most helpful, it is not essential in all cases. Here Dr. Hahn, who had many years of experience with a mental hospital located in a residential zone, said he had observed no detrimental effect on the neighborhood. Members of the board viewed the two clinics in New Jersey similar to the proposed hospital and found no detrimental effect therefrom on property values. There was no evidence before the board showing that an adverse effect on the zoning plan would result from the proposed use. Further, the grant of the variance was on conditions which would minimize any intrusive effect which the hospital might have on the neighborhood. See *Roman Catholic Diocese of Newark v. Ho-Ho-Kus Borough,* 47 *N. J.* 211, 217–218 (1966), and concurring opinion

of Justice Hall, 47 *N. J.* 218, 224; *Black v. Town of Mont-clair*, 34 *N. J.* 105, 114–115 (1961).

Plaintiffs contend that the "special reasons" of the statute were not met because: (1) there was no showing that the land was unsuitable for the zoned uses or particularly suitable for the proposed use; and (2) the Board and the Township Committee exceeded their powers by not limiting their consideration of general welfare to benefits to the residents of the Township.

The "special reasons" for granting a variance from zoning use restrictions are derived from the zoning standards set forth in *N. J. S. A.* 40:55–32. *Ward v. Scott*, 11 *N. J.* 117, 125–126 (1952). The standard of *N. J. S. A.* 40:55–32 here pertinent is promotion of the "general welfare."

As to plaintiffs' first contention it is settled that if a use variance meets the negative criteria, as we have found here, the variance may be affirmatively based solely on the special reason of promotion of the general welfare without regard to the inutility or special utility of the land as against the zoned uses. *Kramer v. Board of Adjust., Sea Girt*, 45 *N. J.* 268, 292 (1965); *Andrews v. Ocean Twp., supra*, 30 *N. J.*, at *pp.* 250–251; *Yahnel v. Board of Adjust. of James-burg*, 79 *N. J. Super.* 509, 517 (*App. Div.* 1963), certification denied 41 *N. J.* 116 (1963). See Cunningham, "Flexible Zoning and the New Jersey 'Special Reasons' Variance Procedure," 15 *Zoning Digest* 169 (1963).

The testimony of Dr. Hahn confirmed applicant's representations that an urgent need existed for the establishment of private hospitals of the kind proposed by applicant for mentally disturbed persons. There are only two such hospitals currently in operation in this State. It cannot be questioned, particularly in view of this need, that providing another such hospital for the treatment of mentally disturbed persons furthers the public welfare. If it were necessary we might, as did Judge Brown in the Law Division, take judicial notice of the high incidence of mental illness. However, here the uncontradicted testimony of Dr. Hahn and the

applicant (himself a physician) was sufficient to show the public interest to be served by such a facility.

Plaintiffs' second argument would limit zoning authorities to a consideration of only those benefits to the general welfare which would be received by residents of the Township. Plaintiffs contend that this limitation is proper because "the municipality itself is not equipped to make a valid determination as to the requirements of the welfare of any other governmental unit than its own." The board here found that the proposed hospital "would be of substantial benefit to the public and particularly to Washington Township and the surrounding communities." If the board and Township Committee were limited to a consideration of only the public welfare of Washington Township, this finding might well be deemed arbitrary. But such is not the case.

A municipality may look beyond its own borders for zoning purposes and recognize legitimate regional needs. *Duffcon Concrete Products v. Borough of Cresskill*, 1 *N. J.* 509, 513, 9 *A. L. R. 2d* 678 (1949). It may provide cooperatively for the needs of neighboring communities as well as its own. *Andrews v. Ocean Twp., supra*, 30 *N. J.*, at *p.* 251. See *Kozesnik v. Township of Montgomery*, 24 *N. J.* 154, 162–163 (1957). Recently there has been recognition that local zoning authorities should look beyond their own provincial needs to regional requirements. Haar, "Regionalism and Realism in Land-Use Planning," 105 *U. Pa. L. Rev.* 515 (1957), Comment, "Zoning Against the Public Welfare: Judicial Limitations on Municipal Parochialism," 71 *Yale L. J.* 720 (1962). Although municipalities in their consideration of use variances have not yet been compelled to recognize values that transcend municipal lines, they certainly should be encouraged to consider regional needs and be supported by the courts when they do so for sound reasons. *Cf. Roman Catholic Diocese of Newark v. Ho-Ho-Kus Borough, supra*, 47 *N. J.*, at *p.* 218; concurring opinion of Justice Hall, 47 *N. J.*, at *p.* 223; *Borough of Cresskill v. Borough of Dumont*, 15 *N. J.* 238, 247 (1954).

 General welfare, as that concept is used in the determination of whether special reasons exist under *N. J. S. A.* 40:55–39(d) for granting a use variance, comprehends the benefits not merely within municipal boundaries but also those to the regions of the State relevant to the public interest to be served.

Plaintiffs finally contend that the board's findings that tax revenue and employment would be increased by the proposed use are irrelevant under *N. J. S. A.* 40:55–39(d), and because of these extraneous reasons, the determination by the board and Township Committee to grant the variance is vitiated.

 The effect of zoning on municipal tax revenues and employment may be considered by the zoning authorities along with other valid reasons when they act legislatively to enact the zoning plan. See *Gruber v. Mayor and Tp. Com. of Raritan Tp.,* 39 *N. J.* 1, 9–11 (1962), and *Ward v. Montgomery Tp.,* 28 *N. J.* 529, 535 (1959). Although increased tax revenue and employment would not be sufficient in themselves to support a use variance, consideration of these factors does not give cause to upset a grant where the special reason of promotion of the general welfare has been shown. Moreover, plaintiffs' suggestion has already been rejected by this Court:

"The only issue before us is whether, in the light of the special reasons advanced and the supporting evidence, the variance may be deemed to have been granted arbitrarily, capriciously or unreasonably. In passing on this issue we must look at the entire picture and consider the reasons in their aggregate; it is in nowise controlling that one or more of the reasons standing alone would not be legally sufficient." *Ward v. Scott,* 16 *N. J.* 16, 21 (1954).

 For the foregoing reasons we find that the plaintiffs have failed to show that the Board of Adjustment and Township Committee were arbitrary or capricious in their grant of the variance.

Affirmed.

*For affirmance* — Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, SCHETTINO and HANEMAN — 6.

*For reversal* — None.