116 N.J. Super. 337 (1971)
282 A.2d 410
HARRISON H. BONSALL, PLAINTIFF-APPELLANT,
v.
THE TOWNSHIP OF MENDHAM, A MUNICIPAL CORPORATION OF THE COUNTY OF MORRIS AND STATE OF NEW JERSEY; THE BOARD OF ADJUSTMENT OF THE TOWNSHIP OF MENDHAM; ELWOOD B. FAKE, BUILDING INSPECTOR OF THE TOWNSHIP OF MENDHAM, AND THE SEEING EYE, INC., A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 22, 1971.
Decided October 15, 1971.
*338 Before Judges KILKENNY, LABRECQUE and LANE.
*339 Mr. Harrison H. Bonsall, appellant, argued the cause pro se.
Mr. Robert A. Levenstien argued the cause for respondents Township of Mendham and Elwood B. Fake, Building Inspector (Messrs. O'Donnell, Conway and Leary, attorneys).
Mr. John M. Mills argued the cause for respondent Board of Adjustment of the Township of Mendham (Messrs. Mills, Doyle & Muir, attorneys).
Mr. Barry M. Johnston argued the cause on behalf of respondent The Seeing Eye, Inc. (Messrs. Jeffers & Dillon, attorneys; Mr. Robert J. DelTufo, of counsel).
The opinion of the court was delivered by LABRECQUE, J.A.D.
Plaintiff appeals from an adverse judgment on his complaint in lieu of prerogative writs. In essence he challenges the granting of a variance authorizing the construction of a 20' x 70' building enclosure over a dog run located on property of The Seeing Eye, Inc. (Seeing Eye), and a resolution of the township committee permitting two other kennel buildings constructed in 1963 and 1966, for which no certificate of occupancy had been issued, to remain on the Seeing Eye premises.
Seeing Eye is a nationally known philanthropic and charitable corporation which trains Seeing Eye dogs for use by blind people and teaches blind people to use them. Most of the dogs required for its program are raised on the 100-acre farm tract here involved, located on Ironia Road in Mendham Township. When the property was acquired in 1948 it was zoned residential, and an amendment to the zoning ordinance added as a residential use "the scientific breeding and raising of dogs for philanthropic and charitable purposes * * *." Seeing Eye thereafter proceeded to develop and use the property for the selective breeding of dogs. In general, puppies would be kept on the property *340 only until they were eight to ten weeks old, with a possibility of their return later for x-rays. The facilities when filled to capacity would hold 93 puppies and 96 mature dogs, but so far as the record before us reveals there were never that many dogs on the premises at one time. In 1967 7 males and 29 females produced 134 puppies over the entire year.
In 1958 plaintiff Harrison H. Bonsall became the owner of a dwelling located on Ironia Road, some 700 feet from the nearest Seeing Eye building. He testified he purchased without knowledge that the kennels were there. In 1961 a new zoning ordinance was enacted in which the provision which permitted the scientific breeding and raising of dogs for philanthropic and charitable purposes as a residential use was omitted. In 1963 and again in 1965 Seeing Eye applied for and received a building permit for the construction of a structure (the second was not completed until 1966) to enclose an asphalt dog run then in operation. This construction also resulted in the enclosure of an interior roadway which had separated the two dog runs. No certificate of occupancy was ever issued for either structure though they have since been in continuous use.
Sometime in July 1968 Seeing Eye began the erection of a third structure over another dog run, this time without having obtained a building permit. Plaintiff complained to the building inspector, who thereupon issued a "stop work" order and directed the removal of the half-completed structure within 30 days. An application for a building permit was subsequently denied on the ground that construction of the building would amount to an extension of a nonconforming use in violation of the zoning ordinance.
Thereafter, upon the alleged failure of the building inspector to take any further action against the structures, plaintiff filed a complaint in municipal court.
In the meantime Seeing Eye appealed to the board of adjustment from the building inspector's refusal to grant a permit for the construction of the 1968 building and, alternatively, *341 sought a variance pursuant to N.J.S.A. 40:55-39(d). At the hearing before the board it waived the determination of whether the proposed structure amounted to an extension of a nonconforming use and supported its variance application by proof that the structure was solely intended to enclose a dog run which pre-existed the amended ordinance, and that it would not increase the capacity of the kennels but would greatly reduce the noise emanating from the dogs kept in that portion of the premises. There was testimony that cleanliness would be facilitated by the enclosure of the dog run. A real estate expert testified that the erection of the building would have no effect on surrounding property values  that it was hardly visible to any adjoining property owners. Plaintiff testified that the noise from the kennels had increased since 1959.
On November 25, 1968 the board of adjustment recommended to the township committee that a variance be granted. The township committee approved the variance by a resolution dated January 27, 1969. It attached a condition that upon the erection of the structure the applicant would not be permitted to attach an open dog run to it. Additional resolutions directed that no action be taken to compel the removal of the first two buildings, but that the building inspector file and the township attorney prosecute complaints against Seeing Eye.
The present action was instituted in March 1969. One month later the building inspector filed a complaint in the municipal court based upon Seeing Eye's failure to obtain certificates of occupancy for the first two buildings and its failure to obtain a building permit for the third building. The complaint filed by plaintiff in the municipal court was thereupon dismissed.
The board of adjustment found, in essence, that (1) Seeing Eye was a nonprofit philanthropic corporation whose purpose it was to help blind people; (2) the premises in question were used for the scientific breeding and raising *342 of dogs for the use of the blind; (3) the kennel operation had become a nonconforming use; (4) the dog run which it was proposed to enclose had been used for the breeding and housing of dogs since 1949; (5) the proposed structure would improve animal husbandry; (6) it was located several hundred feet from Ironia Road and centrally located within the 100 acres owned by Seeing Eye, and (7) the proposed building would lessen the noise of barking dogs. It concluded that the variance could be granted without detriment to the public good and that it would not substantially impair the intent and purpose of the zone plan and zoning ordinance, and that it would further a use beneficial to the general welfare.
At the pretrial the court recognized the pendency of the municipal court complaint referable to the 1963 and 1966 structures, and all parties entered into a stipulation as follows:
The present attorneys and the plaintiff pro se agree that the Court shall decide all of the meritorious issues, including the granting of the permits in 1963 and 1966 and, if properly granted, whether the Court should then order the issuance of a certificate of occupancy; or if improperly granted is the plaintiff estopped by reason of inaction from complaining about the improper issuance; or was there sufficient color of authority, plus reliance and action thereon by Seeing Eye to cause the Court to find that equitably Seeing Eye is entitled to a certificate of occupancy. In either of the last two eventualities, should the Court restrain further prosecution in the municipal court of cases there pending concerning failure of certificate of occupancy.
On the issue of whether the enclosure of the dog run amounted to an enlargement of a nonconforming use the court, after visiting the premises and hearing oral argument, concluded that it was. However, it held that the use to which the property was devoted was of institutional dimension and satisfied the general welfare requirement for the granting of the variance. It further found that the negative criteria referred to above had been met. The court declined to order the 1963 and 1966 buildings to be removed. *343 Instead, it ordered certificates of occupancy to issue subject to compliance of the structures with the building code. It found no evidence of fraud, deceit or lack of good faith on the part of Seeing Eye in their construction and concluded that the challenge to the two buildings in question was barred by estoppel.
The crux of plaintiff's challenge to the granting of the variance is that it substantially impaired the intent and purpose of the zone plan and zoning ordinance and was not supported by the special reasons required by N.J.S.A. 40:55-39(d).
Municipal governing bodies may exercise broad powers in their zoning regulation of land and structures. Ward v. Scott, 16 N.J. 16, 22 (1954). Local officials familiar with the community's characteristics and interests have been held to be best equipped to pass initially upon applications for variances. Id. at 23. In general, the board of adjustment is to be sustained if its decision comports with the statutory criteria and is based upon adequate proofs. Yahnel v. Board of Adjustment, Jamesburg, 79 N.J. Super. 509, 519 (App. Div. 1963), certif. den. 41 N.J. 116 (1963). Where an application for a variance has been given careful consideration by the board and the municipal governing body, judicial interference is called for only when the challenged action is found to be arbitrary, capricious or unreasonable and amounts to a manifest abuse of their discretionary authority. Ward v. Scott, supra, 16 N.J. at 23; Schmidt v. Board of Adjustment, Newark, 9 N.J. 405, 423 (1952).
We are in accord with the conclusion of the trial judge that the findings of the board, that special reason existed for the grant of the variance and the negative critera required by N.J.S.A. 40:55-39(d) had been met, are supported by the proofs. In Andrews v. Ocean Tp. Board of Adjustment, 30 N.J. 245, 250-251 (1959), it was held that the zoning criterion of promotion of the general welfare was in itself a sufficient basis on which to ground a (d) *344 variance provided the negative criteria of the statute were also satisfied. No rigid formula has been devised to test a valid (d) variance on general welfare grounds and each case must turn upon its own circumstances. Id. at 251. Typical variances sustained on that basis have been for certain uses of institutional dimension. These have included parochial schools, Andrews v. Ocean Tp. Board of Adjustment, supra, and Black v. Montclair, 34 N.J. 105 (1961); a hospital for the emotionally disturbed, Kunzler v. Hoffman, 48 N.J. 277 (1966); a telephone exchange, Yahnel v. Board of Adjustment, Jamesburg, supra; a private school, Burton v. Montclair, 40 N.J. 1 (1963). See also Kramer v. Board of Adjustment, Sea Girt, 45 N.J. 268, 286, 290 (1965), which involved a replacement for a seaside hotel.
We are in agreement that the proposed use was one of institutional dimension in furtherance of the public welfare which qualified as a special reason for the grant of the variance. Seeing Eye was admittedly a nonprofit organization devoted solely to helping blind people gain independence and freedom via the resumption of mobility through the use of Seeing Eye dogs. Its activities extended in many directions from its home base in Morris County and could be said to be national in scope. Not all dogs were suitable for Seeing Eye use, and most of the dogs finally selected for its program were raised on the 100-acre farm here involved.
We are satisfied that the portion of the program devoted to the breeding and raising of puppies is so inextricably intertwined with the remainder of Seeing Eye's program of restoring the mobility of blind persons as to justify the finding by the board that it constituted a special reason for the granting of the variance. Preliminary and absolutely essential to the carrying out of the program was the selective breeding of dogs who would be physically and temperamentally fitted for further training. Had this portion of the program been carried out on the premises where Seeing Eye's other activities were carried out, there would be little *345 doubt as to the status of the operation. It did not cease to serve the public welfare because the breeding phase of the program was carried out (since 1949) on a 100-acre farm in a rural area. Actually, it may be said that the public welfare was further served, since puppies are given to barking and pose problems of cleanliness which point to a farm, rather than a built-up area, as an appropriate location for them.
Kohl v. Mayor, etc., Fair Lawn, 50 N.J. 268 (1967), cited by plaintiff, does not dictate a contrary result. There the court was dealing with a variance for a proposed addition to a dairy (a nonconforming use in a residential area) and rejected a finding below that since milk was an indispensable article of food and its distribution vital to the welfare and health of its customers, this afforded a special reason for the grant of the variance. Id., at 279. We are not here concerned with the sale of a product, whether it be puppies or milk. The puppies were not raised for sale but as an essential and component part of a complete program which inherently served the public good. The program afforded relief to blind people from their disability, just as a school affords relief from ignorance or a hospital from the pain and disability occasioned by injury or disease.
Plaintiff also urges that the negative criteria prescribed by the statute were not satisfied. We disagree. The proofs overwhelmingly support the findings of the board that the variance could be granted without substantial detriment to the public good and would not substantially impair the intent and purpose of the zone plan and zoning ordinance. There was uncontradicted expert testimony that the value of adjacent land would not be affected. The proposed structure was located on a large tract, screened by shrubbery and hardly visible from the highway. Persons living closer to the area than plaintiff stated they were not disturbed by the Seeing Eye operation. The proofs were ample that construction of the structure would reduce noise and create more sanitary conditions.
*346 We find no merit to plaintiff's challenge to that portion of the judgment of the Law Division directing the issuance of certificates of occupancy for the 1963 and 1966 buildings, subject to their compliance with the building code. While the building permits for the two buildings were improperly issued, the court, under the agreement that it should settle all controversies, properly exercised its equitable powers to require that certificates of occupancy issue. The alternative would have been to order the removal of the two buildings while staying their actual removal pending an application for a proper variance. The court's finding of Seeing Eye's good faith reliance on the building permits justified the invocation of estoppel as a bar to their removal. Cf. Sautto v. Edenboro Apartments, Inc., 69 N.J. Super. 420, 429-430 (App. Div. 1961); Tremarco Corp. v. Garzio, 32 N.J. 448, 454-455 (1960). It would have been a gross inequity to penalize it for the building inspector's apparent misinterpretation of the ordinance. See Jantausch v. Verona, 41 N.J. Super. 89, 94-95 (Law Div. 1956), aff'd 24 N.J. 326 (1957). His view can hardly be said to have been unreasonable. From a reading of the resolution recommending the variance it would appear that the board itself was not too sure that construction of the 1968 building amounted to an extension of the nonconforming use.
By reason of the foregoing, we find it unnecessary to determine whether plaintiff, who was the only one seeking removal of the two buildings, was in such laches as to be disentitled to such relief. As noted, he purchased his property in 1958, allegedly without even having been aware of the presence of the dog kennels 700 feet away. Though he knew of the passage of the new ordinance in 1961, he did nothing when the 1963 and 1966 buildings were erected. The record reveals no lack of past complaints by plaintiff concerning the operation of Seeing Eye's kennels. Even though he may not have been aware until 1968 of the omission to obtain certificates of occupancy for the two *347 buildings, it is by no means clear that he was not previously aware of their existence. If, as he testified, he did not become aware of them until 1968, it is difficult to avoid the inference that the amount of noise emanating from them was minimal. The court specifically found that the noise had not materially increased since construction of the two buildings. The proofs support this finding.
Our consideration of the remaining points made by plaintiff convinces us that they are without merit. We so hold notwithstanding the apparent impatience of the chairman of the board of adjustment and the somewhat discourteous treatment accorded plaintiff at times during the hearing. We are in accord with the comment of Judge Waugh that plaintiff "has a right to oppose what others approve. He is entitled to courteous treatment and a full hearing. I recognize that good citizens give time to public bodies, such as zoning bodies. I can only suggest that those who do not have patience and an open mind would serve best by stepping aside." However, we cannot say that plaintiff has been deprived of a fair hearing. The record before us is full and complete and speaks well for the study and preparation which plaintiff, a layman, gave to the case. Additionally, plaintiff has since had full opportunity to present his contentions before the governing body, before the Law Division and now before us.
Plaintiff's contention that he was not permitted to elicit from Mr. Merritt, chairman of the planning board in 1961, the intent of that board in eliminating the provision permitting the breeding of Seeing Eye dogs in the zone, is likewise without merit. The interpretation to be accorded the ordinance was to be gathered from the ordinance itself rather than from the testimony of former members of the board. The conclusion is clear that the revised ordinance rendered Seeing Eye's activities in Mendham Township a nonconforming use.
The judgment of the Law Division is accordingly affirmed.