118 N.J. Super. 445 (1972)
288 A.2d 308
WICKATUNK VILLAGE, INC., A BODY CORPORATE OF THE STATE OF NEW JERSEY, PLAINTIFF,
v.
TOWNSHIP OF MARLBORO, DEFENDANT. THE TOWNSHIP OF MARLBORO, IN THE COUNTY OF MONMOUTH, A MUNICIPAL CORPORATION OF NEW JERSEY, PLAINTIFF,
v.
WICKATUNK VILLAGE, INC., A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT.
Superior Court of New Jersey, Law Division Superior Court of New Jersey, Chancery Division.
Decided March 1, 1972.
*447 Mr. John Warren for Wickatunk Village, Inc. (Messrs. Parsons, Canzona, Blair & Warren, attorneys).
Mr. Herbert B. Bierman for the Township of Marlboro.
LANE, J.S.C.
These matters have been consolidated and are before the court on final hearing.
Wickatunk Village, Inc., in its complaint in lieu of prerogative writs, challenges the validity of a statutory denial under N.J.S.A. 40:55-39.1 of a variance recommended by the board of adjustment under N.J.S.A. 40:55-39(d) to construct and operate a tertiary sewerage treatment plant in a residential zone. In the Chancery Division action Marlboro *448 seeks an injunction to prohibit the use of the treatment plant and for an order to move the plant.
Testimony was taken before the board of adjustment on the application for a variance. Wickatunk Village, Inc. is the owner of premises consisting of 42.5 acres located in an R-2 residential zone. It operates a mobile home trailer park on a 15-acre portion of the premises by virtue of a judgment of this court in Docket No. C-1641-57 (P.W.) adjudging the use of the 15 acres for mobile homes to be a nonconforming use.
At some time before April 15, 1970 Wickatunk constructed the tertiary sewerage treatment plant outside the 15-acre mobile home portion of the premises at a cost of approximately $60,000. The plant replaced septic tanks which had not been operating properly and through which raw sewerage had flowed into a stream known as Bailey's Brook. No building permit or variance was obtained. It is perfectly obvious that the municipal officials were fully aware of the construction while it was going on. The plant was inspected and approved by the executive officer of the township's Division of Health. Although the complaint in the Chancery Division action was filed April 15, 1970, on April 20, 1970 the Marlboro Township Municipal Utilities Authority adopted a resolution approving plans for the sewerage plant.
During the construction the township administrator visited the site, and other officials were aware of the construction. To move the sewerage plant would cost $30,000 and take six weeks, during which all 104 families in the trailer park would have to move out.
The board of adjustment adopted a resolution recommending to the governing body that a variance be granted.
The sewerage treatment plant as constructed was approved by the Division of Environmental Quality, New Jersey Department of Environmental Protection; by the New Jersey Department of Health and by the Division of Health of the township. After making basic findings of fact, the board of adjustment found that Wickatunk had shown *449 special reasons for the grant of the variance under N.J.S.A. 40:55-39(d) and had satisfied the negative criteria of the statute.
The governing body failed to take action on the recommendation, which resulted in a statutory denial under N.J.S.A. 40:55-39.1.
Wickatunk argues that where there is a statutory denial under N.J.S.A. 40:55-39.1, such denial should not be accorded the usual presumption of validity of action by municipal bodies. It argues that the only presumption that this court should consider is that of the validity of the board of adjustment's recommendation which should only be interfered with upon a showing that it was arbitrary, capricious or unreasonable. From this position Wickatunk Village contends that since there was no proof that the recommendation of the board of adjustment was arbitrary, capricious or unreasonable, the court should order the governing body to approve the application for a variance.
No case has been found construing N.J.S.A. 40:55-39.1 or discussing the scope of the court's review of a denial under that statute.
Wickatunk's argument does not take into consideration that upon an application for a variance pursuant to N.J.S.A. 40:55-39(d) the board of adjustment only has power to recommend. Morton v. Mayor, etc. Clark Tp., 102 N.J. Super. 84, 90 (Law Div. 1968), aff'd o.b. 108 N.J. Super. 74 (App. Div. 1969). Such recommendation is not reviewable until the governing body takes action. Rogoff v. Tufariello, 106 N.J. Super. 303, 309 (App. Div.), certif. den. 54 N.J. 583 (1969). Where the municipal governing body acts on a variance recommendation, its action is presumed correct. Kramer v. Bd. of Adjust., Sea Girt, 45 N.J. 268, 285 (1965). Since under N.J.S.A. 40:55-39.1 the effect of inaction is the same as though the governing body had acted and denied by resolution, the statutory denial must as well be presumed valid. Cf. Griggs v. Zoning Bd. of Adjustment, Princeton, 75 N.J. Super. 438, 444 (App. Div. *450 1962); Miller v. Boonton Tp. Bd. of Adjustment, 67 N.J. Super. 460, 469-471 (App. Div. 1961).
Where there is a statutory denial pursuant to N.J.S.A. 40:55-39.1, the court's scope of review is the same as when it reviews any other action by the governing body denying a variance. Therefore, the issue is not whether the recommendation of the board of adjustment is unreasonable, but whether the denial by the governing body is unreasonable. The presumption which attaches is that of validity of the governing body's statutory denial.
The township argues that the record before the board of adjustment fails to show "special reasons" for granting the variance. N.J.S.A. 40:55-39(d) authorizes the grant of a use variance upon an affirmative finding of "special reasons" in a particular case, together with negative findings that the variance will not be a substantial detriment to the public good and will not substantially impair the intent and purpose of the zone plan and zoning ordinance. DeSimone v. Greater Englewood Housing Corp. No. 1, 56 N.J. 428, 440 (1970); Kohl v. Mayor, etc. Fair Lawn, 50 N.J. 268, 276 (1967); Kunzler v. Hoffman, 48 N.J. 277, 284 (1966); Andrews v. Ocean Tp. Board of Adjustment, 30 N.J. 245, 249 (1959).
It is not necessary to show that a particular premises cannot be feasibly used for a permitted use or that other hardship exists. "Special reasons" is a flexible concept. Broadly speaking, it may be defined by the purposes of zoning set forth in N.J.S.A. 40:55-32:
* * * to lessen congestion in the streets; secure safety from fire, flood, panic and other dangers; promote health, morals or the general welfare; provide adequate light and air; prevent the overcrowding of land or buildings; avoid undue concentration of population. * * *
DeSimone v. Greater Englewood Housing Corp. No. 1, supra, 56 N.J. at 440; Kohl v. Mayor, etc., Fair Lawn, supra, 50 N.J. at 276; Kunzler v. Hoffman, supra, 48 N.J. *451 at 284; Andrews v. Ocean Tp. Board of Adjustment, supra, 30 N.J. at 251.
While no definition of "special reasons" has been attempted beyond the reference to N.J.S.A. 40:55-32, the lack of precise formula does not mean that local governing bodies have been given unlimited discretion in finding "special reasons" for the grant of variances. Otherwise, variances could be awarded indiscriminately merely because they do not offend the negative criteria of the statute. Kohl v. Mayor, etc., Fair Lawn, supra, 50 N.J. at 276.
Adequate "special reasons" are any which, taken as a whole, are founded affirmatively in the zoning objectives set forth in N.J.S.A. 40:55-32. Bern v. Fair Lawn, 65 N.J. Super. 435, 446 (App. Div. 1961). In passing on this issue, the court must look at the entire picture and consider the reasons in their aggregate. It is not controlling that one or more of the reasons standing alone would not be legally sufficient. Kramer v. Bd. of Adjust., Sea Girt, supra, 45 N.J. at 287; Ward v. Scott, 16 N.J. 16, 21 (1954).
Plaintiff argues that the sewerage plant is needed in order to treat adequately and dispose of the effluent produced by the mobile homes. This is in essence the "general welfare" standard.
Generally, "special reasons" variances granted for "general welfare" have involved certain uses of institutional dimensions. Bonsall v. Mendham Tp., 116 N.J. Super. 337, 344 (App. Div.) certif. den. 59 N.J. 529 (1971). Usually such uses have "inherently" served the public good. Kohl v. Mayor, etc. Fair Lawn, supra, 50 N.J. at 279. They have included parochial schools, Andrews v. Ocean Tp. Board of Adjustment, supra, 30 N.J. at 245, and Black v. Montclair, 34 N.J. 105 (1961); a hospital for the emotionally disturbed, Kunzler v. Hoffman, supra, 48 N.J. at 277; a private school, Burton v. Montclair, 40 N.J. 1 (1963); seeing-eye dog kennels, Bonsall v. Mendham Tp., supra, 116 N.J. Super. at 337. Where the use is not of the type which has been held inherently to serve the public good, there must *452 be a finding that the general welfare is served because the use is peculiarly fitted to the particular location for which the variance is sought. Kohl v. Mayor, etc. Fair Lawn, supra, 50 N.J. at 279-280.
Wickatunk's proposed use is that of a tertiary sewerage treatment plant. The system has been duly approved by the appropriate state and municipal officials. Its construction was, and its operation is, supervised by the State Department of Environmental Protection. It has been approved by that department. It replaces a septic tank system which was pumping raw sewerage into a stream. The tertiary sewerage system pumps effluent into the stream providing "95% oxygen demand on the organic loading." There can be no doubt that, in view of crucial problems being caused by poorly treated sewerage and in view of the need for an efficient sewerage system to serve the mobile homes, Wickatunk's proposed use is per se beneficial to the general welfare. Wickatunk has clearly presented "special reasons" for a variance.
There remains to consider whether Wickatunk's proofs satisfy the negative criteria so that a contrary finding would be arbitrary. There was sufficient competent evidence to support a finding that the proposed use would not be detrimental to the public good. Mr. Sackowitz, executive officer of Marlboro's Division of Health, testified that the plant was operating satisfactorily. He testified that from the public health standpoint, it would be better for the mobile home park site to utilize a tertiary sewerage plant. A reasonable inference is that the public good will not be harmed. The record before the board of adjustment adequately establishes that the zone plan and zoning ordinance will not be substantially impaired by the granting of the variance.
The denial by the governing body of the variance was arbitrary, capricious and unreasonable and will be set aside. Judgment will be entered directing the governing body to grant approval of the variance applied for. It follows that the Chancery Division action will be dismissed.