202 N.J. Super. 312 (1985)
495 A.2d 119
CHARLIE BROWN OF CHATHAM, INC., A NEW JERSEY CORPORATION, PLAINTIFF-APPELLANT,
v.
BOARD OF ADJUSTMENT FOR THE TOWNSHIP OF CHATHAM, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued April 22, 1985.
Decided June 26, 1985.
*317 Before Judges KING, DEIGHAN and BILDER.
Frank T. Swain argued the cause for appellant.
Carl R. Woodward, III argued the cause for respondent (Bozonelis, Staehle & Woodward, attorneys; Mr. Woodward, on the brief).
The opinion of the court was delivered by DEIGHAN, J.A.D.
Plaintiff, Charlie Brown of Chatham, Inc. (Charlie Brown), filed an action in lieu of prerogative writs from a denial by the Zoning Board of Adjustment of the Township of Chatham (Zoning Board) of its application to provide sleeping accommodations for six of its employees on the second floor of its restaurant. Application was made on the basis of an accessory use under the Municipal Land Use Ordinance and for a variance for special reasons pursuant to N.J.S.A. 40:55D-70d. On appeal, the Superior Court, Law Division affirmed the action of the Zoning Board.
On this appeal plaintiff contends that: (1) the provision for sleeping quarters for selected restaurant employees is an accessory use to permitted restaurant operation in the business zone proscribing residential uses under the Land Use Ordinance (LUO); (2) the Zoning Board improperly took judicial notice of prior proceedings of the Planning Board of the Township of Chatham respecting plaintiff's property; (3) plaintiff (a) established special reason and (b) satisfied the negative criteria for a *318 use variance pursuant to N.J.S.A. 40:55D-70d, and (4) the Zoning Board in denying plaintiff's application was arbitrary, capricious and unreasonable. We disagree and affirm.
Plaintiff is the tenant and operator of a restaurant known as Charlie Brown located at 522 Southern Boulevard, Township of Chatham. The restaurant is located in a B (Neighborhood Business) District under the LUO. Section 703.1(c) of the LUO permits restaurants in the B District "in which patrons seated at tables or counters are served food and drink." It does not permit residential use. Section 703.2 (Permitted Accessory Use) of the LUO permits signs, off-street parking and "other accessory uses customarily incident to the uses listed in Section 703.1."
Accessory use is defined as "[a] use naturally and normally incident and subordinate to the principal use of a structure or lot, but not including any outdoor storage prohibited by Section 705.16." The LUO in Section 705.8 provides: "[w]here a use is not specifically permitted in a zone district, it is prohibited." Inasmuch as residential uses are prohibited in the B District, the mixed residential-commercial use is prohibited, unless the dormitory use falls within the definition of "accessory use."
Plaintiff leased the premises and commenced extensive renovations pursuant to a preliminary and final site plan approval granted by the Planning Board of the Township of Chatham by a resolution of July 19, 1982. Site plan approval was conditional: "Preliminary final site plan approval is hereby granted on the expressed condition that the second floor apartments shall not be used or occupied as a residential unit or for residential business."
On October 28, 1982, plaintiff applied to Martin J. Egan, construction official of the Township, for permission to provide sleeping accommodations for not more than six of the restaurant personnel on the second floor of the restaurant premises. On November 1, 1982, Egan responded that Article 703.1 and *319 Article 703.2 of the LUO did not permit mixed uses and that the Planning Board resolution approving the site plan specifically prohibited such use. On December 3, 1982, plaintiff appealed to the Zoning Board pursuant to N.J.S.A. 40:55D-70a.
The Charlie Brown chain of restaurants has a management policy of providing sleeping accommodations for its key employees as part of its overall compensation program. Accommodations in connection with the various restaurants may be either on-premises or off-premises depending upon the facility and the zoning restrictions in the particular community. Plaintiff's witnesses described the key employees as principally orientals who come from New York, work at the specific restaurant location and return to New York during days off. This policy enables the plaintiff to attract and maintain a high-quality kitchen staff. A house in the nearby community of New Providence has presently been rented for $700 per month to house these employees who are then driven between the two locations as their schedules require. The principal reason for using the second floor of the subject premises was one of economic convenience for the plaintiff.
Jeffrey Back, president of Charlie Brown Restaurants, New Jersey Division, who qualified as a restaurant industry expert, testified at length as to the benefits connected with providing sleeping accommodations for employees. He compared the accommodations with those of a ski resort.
Plaintiff also presented a planning expert, John A. Madden, Jr. who testified that the practice of providing housing accommodations for restaurant staff was a natural and normal accessory use in the restaurant business. This practice, he explained, has been with us since colonial times when the owners of restaurants and taverns resided on the premises. Madden further explained that under the Morris County Master Plan, the restaurant is located in the commercial center of Chatham known as Hickory Tree which is surrounded by garden apartments. He stated that the Master Plan stresses the need for a *320 balance between availability of housing and job locations and noted that there was no minimal multi-housing available within Chatham Township, a predominantly single-family community. Also noted were the pay scale of the employees, the high rents in the area and the lack of convenient mass transit.
Theodore Rubnowski, an architect who has worked for the Charlie Brown chain of restaurants, testified that accommodations have been provided in the past in older buildings where renovations have been made. However, no new restaurant structure which he has worked on has included accommodations. He also said that under the New Jersey Uniform Construction Code, restaurant use (A3) falls within the assembly building category while the dormitory would fall within the (R2) use group, which is a residential facility for accommodations for more than five and less than twenty individuals.
Robert O'Grady, the planner of the Township of Chatham testified in opposition to the plaintiff's application. He stated that he was the draftsman of the Municipal Land Use Ordinance. He noted that both the LUO and the Township Master Plan make a clear distinction between residential and commercial uses in the area. No residential uses are permitted in the business district zone except those in connection with qualified conditional uses permitted under the ordinance. The only residential uses are those specifically essential to security maintenance or emergency functions, i.e., nurses, security guards, and the like. None of these are connected in any way with the operation of restaurants. O'Grady was of the opinion that there was a trend away from mixed uses because of the difficulty in monitoring and enforcing applicable land use and health standards.
The Zoning Board affirmed the decision of the construction official denying the plaintiff permission to use the second floor of the premises as sleeping quarters for certain employees of the restaurant as an accessory use and further denied a use variance pursuant to N.J.S.A. 40:55D-70d.
*321 Initially, when reviewing a decision of a municipal agency the trial court must recognize that the Legislature has vested discretion in the municipal agency to make that decision. Booth v. Bd. of Adj., Rockaway Tp., 50 N.J. 302, 306 (1967). Public bodies, such as the Zoning Board here, because of their peculiar knowledge of local conditions, must be allowed wide latitude in the exercise of their delegated discretion. Id. at 306. The reviewing court may not substitute its judgment for that of the zoning board, Kramer v. Bd. of Adjust., Sea Girt, 45 N.J. 268, 296 (1965); Kenwood Assocs. v. Bd. of Adj. Englewood, 141 N.J. Super. 1, 4 (App.Div. 1976). The action of the board of adjustment in denying a variance is entitled to the customary judicial presumption of validity. Kramer at 296; Kessler v. Bowker, 174 N.J. Super. 478, 486 (App.Div. 1979), certif. den. 85 N.J. 99 (1980). It is presumed that the zoning board, as well as other municipal agencies, act "fairly and with proper motives and for valid reasons." Kramer 45 N.J. at 296.
On appeal, an appellate court is bound by the same scope of review. It gives deference to the municipality's broad discretion and reverses only if it finds the municipal action to be arbitrary, capricious or unreasonable. Shell Oil Co. v. Zoning Bd. of Adj. Shrewsbury, 64 N.J. 334 (1974), rev'g. on dissenting op. 127 N.J. Super. 60, 66 (App.Div. 1973); Booth 50 N.J. at 306. As succinctly summarized in Kramer, supra 45 N.J. at 296-297:
Courts cannot substitute an independent judgment for that of the boards in areas of factual disputes; neither will they exercise anew the original jurisdiction of such boards or trespass on their administrative work. So long as the power exists to do the act complained of and there is substantial evidence to support it, the judicial branch of the government cannot interfere. A local zoning determination will be set aside only when it is arbitrary, capricious or unreasonable. Even when doubt is entertained as to the wisdom of the action, or as to some part of it, there can be no judicial declaration of invalidity in the absence of clear abuse of discretion by the public agencies involved.
The resolution of the Zoning Board in denying the use of the second floor of the restaurant for sleeping quarters for certain employees concluded:

*322 2. The proposed use of the second floor of the subject premises does not constitute a use naturally and normally incident and subordinate to the principal use or customarily incident to such use. The B (Neighborhood Business) District does not permit any residential uses as indicated by Sections 703.1 and 705.8 of the Ordinance. Section 705.8 specifically provides "where a use is not specifically permitted in a zone district, it is prohibited." Accordingly, there appears a clear intention to prevent mixed business and residential uses in the particular zone.
Factually, this is a unique case; no case has been found on point; this is not unusual in an accessory use matter where each case must be determined on the basis of its own particular facts. Newark v. Daly, 85 N.J. Super. 555, 560 (App.Div. 1964), aff'd 46 N.J. 48 (1965). See 2 Rathkopf, The Law of Zoning and Planning, § 23.05 at 23-31 (updated to 3/1985), and Anderson, American Law of Zoning, § 9.39 at 72 (2d ed. Cum. Supp. 1984) where rulings on specific accessory uses are listed. Further, the question of an accessory use must be considered in the context of the provision of the local zoning ordinance. Booth, supra, 50 N.J. at 305, 305 (1967). See Rathkopf, supra, § 23.03 at 23-22.
Here, four sections of the LUO are involved: (1) section 703.1(c) of the LUO permits restaurants in the B District; (2) section 703.2 permits other accessory uses customarily incidental to the uses listed in section 703.1; (3) where a use is not permitted in a zone district, it is prohibited, section 705.8, and, (4) accessory uses are defined under definitions in Article II as those uses naturally and normally incidental and subordinate to the principal use of a structure.
In State v. P.T. & L. Construction Co., Inc., 77 N.J. 20, 26-27 (1978), Judge Conford (temporarily assigned) collated and analyzed the cases on accessory use and succinctly summarized the law:
In analyzing whether a use is customarily incident to the permitted use, two determinations must be made. The first is whether the use is incidental to the main use: does the use "* * * bear a close resemblance and obvious relation to the main use to which the premises are put"? Honigfeld v. Byrnes, 14 N.J. 600, 606 (1954); see Booth v. Bd. of Adjust. of Rockaway Twp., 50 N.J. 302 (1967); United Advertising Corp. v. Metuchen, 42 N.J. 1 (1964); Dolan v. *323 DeCapua, 13 N.J. Super. 500 (Law Div. 1951); DeBenedetti v. Twp. of River Vale, 21 N.J. Super., 430 (App.Div. 1952); Keller v. Westfield, 39 N.J. Super., 430 (App.Div. 1956). Second, it must be determined whether a use which is found to be incident to the permitted use is also a customary use. See Newark v. Daly, 85 N.J. Super., 555 (App.Div. 1964), aff'd 46 N.J. 48 (1965). Generally, a use which is so necessary or commonly to be expected that it cannot be supposed that the ordinance was intended to prevent it will be found to be customary use. Chatham v. Donaldson, 69 N.J. Super. 277, 282 (App.Div. 1961); Northvale v. Blundo, 85 N.J. Super. 56, 60 (App.Div. 1964); see Wright v. Vogt, 7 N.J. 1 (1951). The fact that a use is not customarily indulged in, however, is not conclusive, and even if the use in question is found in a small percentage of similar main uses, the use may still be found to be "Customary". Newark v. Daly, supra, 85 N.J. Super. at 560-561; see Skinner v. Board of Adjust. of Cherry Hill, 80 N.J. Super. 380 (App.Div. 1963).
Applying the above analysis to the facts in the present matter, the proposed use may well have been incidental to the main use. According to the proofs before the Zoning Board, of the 15 Charlie Brown Restaurants in New Jersey, sleeping accommodations are provided on-premises in only seven of the restaurants. Further, in only four of these circumstances is the use permitted by zoning ordinances. The remaining are pre-existing nonconforming uses.
Zoning ordinances which permit "customarily incidental" accessory uses to the main activity permit, by implication, any use that logic and reason dictate are necessary or expected in conjunction with the principal use of the property. 6 Powell, Law of Real Property, (1979) ¶ 869[2][e]. The law is not difficult to recite but difficult to apply, e.g., in Newark v. Daly, supra, a single coin-operated milk-vending machine in the basement of a 400-family high-rise apartment house for use of tenants did not violate a zoning ordinance which limited the use of property in a residential district to multiple dwellings and hotels. On the other hand, a commercial cleaner with a depot manned by a person in the basement of a multi-unit building, apartment where clothing to be cleaned could be deposited, was held to constitute a business within the prohibition of the zoning ordinance and was not an accessory use to the multiple dwelling. Moreover, plaintiff did not show special reasons authorizing the grant of a variance. Zahn v. Newark Bd. of *324 Adj., 45 N.J. Super. 516 (App.Div. 1957). The cases are distinguishable in that Daly was an innocuous milking-vending machine, whereas in Zahn, the operation was manned by a person in a room equipped to operate as an integral part of a business.
The word "incidental" as employed in a definition of "accessory use" incorporates two concepts. It means that the use must be one which is subordinate and minor in significance. It must also incorporate the concept of reasonable relationship with the primary use. It is not enough that the use be subordinate; it must also be attendant or concomitant. To ignore this latter aspect of "incidental" would be to permit any use which is not primary, no matter how unrelated it is to the primary use. Lawrence v. Zoning Bd. of Ap. of Town of North Branford, 158 Conn. 509, 512-513, 264 A.2d 552, 554 (Sup.Ct. 1969); accord Gray v. Ward, 74 Misc.2d 50, 54-55, 343 N.Y.S.2d 749 (Sup.Ct. 1973), aff'd 44 A.D.2d 597, 354 N.Y.S.2d 591 (App.Div. 1974).
An incidental use is one that relates to a business, trade, profession or occupation in general and not specifically to the use which is peculiar to the applicant. Here, plaintiff proffered the testimony directed mainly, if not exclusively, to its own operation and policy and not to incidental uses prevailing generally in the restaurant business. On the proofs presented, the record does not reflect, nor has plaintiff proven, that providing employees sleeping quarters on the premises of a restaurant is reasonably related or incidental to the operation of a restaurant under present day standards.
The word "customarily" is even more difficult to apply. Courts have often held that use of the word "customarily" places a duty on the board or court to determine whether it is usual to maintain the use in question in connection with the primary use. The use must be further scrutinized to determine whether it has commonly, habitually and by long practice been established as reasonably associated with the primary use. Lawrence, supra 158 Conn. at 512-13, 264 A.2d at 554.
*325 Theodore Budnowski, plaintiff's architect, testified that on-premise accommodations were found only in connection with some older restaurants but that newer structures routinely do not provide such accommodations. This observation is supported by Robert O'Grady, planner for the Township. He testified to the undesirability of mixed uses in general and the intent of the LUO which he drafted specifically concerning mixed uses in particular. These reasons are also set forth in his written report of April 7, 1983, introduced as an exhibit in the hearing before the Zoning Board. Indeed, it may be, that it was not uncommon, particularly in family-type restaurant operations, that the family or perhaps employees, on occasion lived on the restaurant premises. However, sleeping quarters for employees in restaurants, as an accessory use in the present era, has not been established by plaintiff.
The Zoning Board adopted the following conclusion concerning a prior resolution of the Planning Board involving the same premise on approval of the site plan application by plaintiff:
3. The Board also finds that notwithstanding the issue of accessory use that the Resolution of the Planning Board specifically prohibited, as a condition of Site Plan Approval, use of the second floor premises for a residential purpose. Inasmuch as the applicant did not appeal this decision, and indeed acknowledged by its counsel that should it desire to use the second floor for a dormitory that it would seek a variance, it has waived its right to claim that it is entitled to an accessory use.
Plaintiff itself referred to the Planning Board resolution in its application to the Zoning Board and the resolution was also referred to by the construction official in his letter of November 1, 1982 denying plaintiff's request for an accessory use. This denial of course was the subject of the appeal to the Zoning Board. Plaintiff's contention that this was erroneous is rejected.
Initially, it is ludicrous to contend that the construction official, who is charged with the enforcement of the zoning ordinance and issuance of permits, must ignore the condition upon which the site plan was granted. This was the very core of the denial of the application for the accessory use and was *326 not only relevant but essential in the determination by the construction officer. It is the springboard of his decision which gave rise to plaintiff's application and as such is an integral part of the proceeding.
Second, the Zoning Board was authorized to take judicial notice of the resolution of the Planning Board under Evid.R. 9(2)(a), which permits judicial notice of "... determinations of governmental subdivisions or agencies ... of this State" and subsection (d) which states, "such facts as are so generally known or of such common notoriety within the area pertinent to the event that they cannot reasonably be subject of dispute." The Planning Board does not enact ordinances and its determinations are promulgated by way of resolutions. In determining the propriety of taking judicial notice of the matter, any source of relevant information may be consulted or used. Evid.R. 10(2)(a).
A Board of Adjustment as a quasi-judicial body is empowered to take judicial notice of matters when and where appropriate. The standard to be applied was set forth in Reinauer Realty Corp. v. Nucera, 59 N.J. Super. 189, 203 (App.Div. 1960):
Although it must be recognized that generally matters dehors the record, of which a board of adjustment has knowledge or takes official notice, must be made a part of the record in order to afford the applicant a fair opportunity of refutation ..., it does not follow that in every instance such matters upon which the board relies in weighing the evidence and reaching a reasoned conclusion must be so spread upon the record. Where matters so recognized and employed in reaching a conclusion are of such a self-evident nature that it is beyond debate that they could not be rebutted or contradicted there is no necessity to accord an applicant such an opportunity. [Citations omitted].
In Fobe Associates v. Mayor & Council of Demarest, 74 N.J. 519 (1977), the objection was to the admission of a resolution of the Planning Board opposing a use variance. The Supreme Court found the Planning Board's resolution to be significant. There as here, the plaintiff did not dispute the accuracy of any facts stated in the Planning Board's resolution. Id. at 542. *327 Here, plaintiff was aware of the resolution long before it was admitted into evidence.
Third, plaintiff is bound by the resolution of the Planning Board prohibiting, as a condition of site plan approval, the use of the second floor for residential purposes by the doctrines of res judicata and collateral estoppel. Res judicata as a principle of law bars a party from relitigating a second time that which was previously fairly litigated and finally determined. The general requirements for the invocation of the principle are a final judgment by a court or tribunal of competent jurisdiction, identity of issues, parties, cause of action and thing sued for. City of Hackensack v. Winner, 162 N.J. Super. 1, 27-28 (App.Div. 1978), mod. 82 N.J. 1 (1980). Collateral estoppel is that branch of the broader law of res judicata which bars relitigation of any issue or fact actually determined in a prior action, generally between the same parties while involving a different claim or cause of action. 162 N.J. Super. at 28. The terms are sometimes used interchangeably and applied broadly. Id.
The principles of res judicata and collateral estoppel are applicable not only to the parties in courts of law, but also in administrative tribunals and agency hearings. Id. 162 N.J. Super. at 24; 2 Restatement, Judgments 2d, § 83(1) (1980). Here, plaintiff obtained site plan approval from the Planning Board on the express condition that second floor apartments would not be used or occupied as a residential unit or for residential purpose. The resolution of the Planning Board was a determination by a quasi-judicial body which precluded plaintiff from again submitting the same issue to the Zoning Board, also a quasi-judicial body, for a second determination. The issue was determined once and having been so determined could not be submitted for a second determination.
As to the use variance, the Zoning Board concluded:
5. Applicant has further not sustained the burden of proving special reasons under N.J.S.A. 40:55D-70d, because there has been no showing of undue *328 hardship or that the use of the property for residential purposes would advance any of the purpose of zoning as set forth in the State Land Use Law.
Plaintiff advanced as special reasons for the grant of a use variance:
1. The limited employee housing occupancy will promote increased security for the restaurant.
2. The general welfare of the community is served because the employee housing occupancy will promote security for the commercial Hickory Tree Center.
Neither of these reasons is valid.
In order to obtain a use variance under N.J.S.A. 40:55D-70d, an applicant must prove that: "(1) `special reasons' exist for the variance, and (2) that the variance `can be granted without substantial detriment to public good and will not substantially impair the intent and purpose of a zoning plan and the zoning ordinance.'" Kohl v. Mayor & Council of Fair Lawn, 50 N.J. 268, 276 (1967); Kessler v. Bowker, supra, 174 N.J. Super. at 485.
Andrews v. Ocean Twp. Board of Adjustment, 30 N.J. 245 (1959), originated the doctrine that "special reasons" for recommending a variance from restrictions of a zoning ordinance may be based solely upon the criteria set forth in the "general welfare" provisions of N.J.S.A. 40:53-32. See Kessler v. Bowker, supra. Uses which serve the general welfare are generally one of two types: (1) the "inherently beneficial" use customarily of a quasi-public nature and (2) a use which serves the public to some degree, but not inherently so. Examples of inherently beneficial uses are found in Black v. Montclair, 34 N.J. 105 (1961) (Expansion of school buildings); Andrews v. Ocean Twp. Board of Adjustment, supra (Parochial school); Borough of Roselle Pk. v. Tp. of Union, 113 N.J. Super. 87 (Law Div. 1970) (Non-profit governmentally financed senior citizens' housing project); Bonsall v. Tp. of Mendham, 116 N.J. Super. 337 (App.Div. 1971), certif. den. 59 N.J. 529 (1971) (A seeing-eye dog facility); Kunzler v. Hoffman, 48 N.J. 277 (1966) (Hospital for emotionally disturbed adults and children); *329 DeSimone v. Greater Englewood Housing Corp. No. 1, 56 N.J. 428 (1970) (Semi-public low and moderate housing for minority or underprivileged segments of the population); Wickatunk Village v. Tp. of Marlboro, 118 N.J. Super. 445 (Ch.Div. 1972) (Sewage treatment plant).
Previous cases in which a significant factor was the contribution of the proposed use of the "general welfare" of the community have all involved uses which inherently served the public good. Kohl v. Mayor & Council of Fair Lawn, supra, 50 N.J. at 279. Where the use is not of the type which of itself provides special reasons, such as a school or hospital, there must be a finding that the general welfare is served because the use is peculiarly fit for the particular location for which the variance is sought. Ibid. This is so because nearly all lawful uses of property promote, in greater or lesser degree, the general welfare. Id. at 280.
There is no question but that plaintiff's property can be put to its zoned use, see Cerdel Constr. Co., Inc. v. East Hanover Tp., 86 N.J. 303, 306 (1981), but the essence of plaintiff's position is that it is more economical for plaintiff to house its key employees on the second floor over the restaurant than to provide separate housing facilities. This does not satisfy the affirmative requirement of special reason under N.J.S.A. 40:55D-70a; Kenwood Assocs. Bd. of Adj. Englewood, 141 N.J. Super. 1, 5 (App.Div. 1976). Special circumstances are not established by a showing that the proposed use would be more profitable to the owner than the permitted uses. Shell Oil Co. v. Zoning Bd. of Adj. Shrewsbury, 127 N.J. Super. at 60, 66.
In Mahler v. Borough of Fair Lawn, 94 N.J. Super. 173, 184 (App.Div. 1967), aff'd o.b. 55 N.J. 1 (1969) this court observed that:
If the social benefits of any individual use were, on the basis of the general welfare concept, to be regarded as an adequate special reason for a (d) use variance, we would have in effect, the untoward and clearly unintended consequence *330 that variances could be awarded indiscriminately merely because they did not offend the negative criteria of the statute.
Continuing we observed that:
In any case, however, the conclusive consideration here is that, whether or not the board could properly have granted a variance recommendation in this situation, there is utterly no basis for a judicial conclusion that it acted arbitrarily, capriciously or unreasonably in exercising its discretionary quasi-judicial powers by denying such a recommendation. And that is the controlling criterion on judicial review, whether the board grants or denied a variance. [94 N.J. Super. at 185].
Accord, Shell Oil Co., supra.
In the present matter the Zoning Board found that special reasons had not been established. From our review of the evidence we found that this determination was supported by substantial credible evidence from the record as a whole and that the record fully supports the affirmance of the Zoning Board by Judge Muir.
Affirmed.