66 N.J. Super. 292 (1961)
168 A.2d 864
SANFORD NALITT, PLAINTIFF,
v.
THE TOWNSHIP OF MILLBURN IN THE COUNTY OF ESSEX, A MUNICIPAL CORPORATION, AND RALPH TROWBRIDGE, BUILDING INSPECTOR OF SAID TOWNSHIP, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided March 16, 1961.
*293 Messrs. Whiting, Moore & Phillips, attorneys for plaintiff (Mr. Ira C. Moore, Jr., of counsel).
Mr. Harold M. Kain, attorney for defendants.
*294 WAUGH, A.J.S.C.
This action was instituted by the plaintiffs, in lieu of prerogative writ, for the purpose of reviewing the legality of a resolution of the township committee of the defendant township which rejected a recommendation of the board of adjustment that a building permit be granted to the plaintiff to erect a bowling alley. The proposed building was to be erected in an industrial zone in the Township of Millburn at a point adjacent to the Springfield Township line. After consideration of the record, I conclude that judgment must be entered in favor of the plaintiff.
The facts disclose that on August 24, 1960 plaintiff Nalitt filed a complaint with the Clerk of the Superior Court seeking a declaratory judgment of his entitlement to erect a bowling alley, setting aside the aforementioned resolution of the township committee, and requiring the defendant building inspector to issue a building permit.
Prior to the initial application to the building inspector, plaintiff contracted for the purchase of a certain tract of land located in the township consisting of four acres, fronting in part on Springfield Avenue, a main traffic artery running through the township in, generally, an east-west direction. The contract contained the usual contingency clause making the consummation thereof dependent upon the issuance, in favor of the plaintiff, of a building permit authorizing the construction of a building to be used for bowling alleys.
On February 24, 1960 application was made to defendant Trowbridge for a building permit, and attached thereto was a copy of the plans showing a contemplated building containing 64 alleys. The application was denied as being in violation of article IV, section 15 of the township's zoning ordinance.
Subsequent to the action of the building inspector, plaintiff filed an appeal with the township board of adjustment. After a full public hearing, the board of adjustment on May 10, 1960 recommended to the township committee *295 that the application be granted on condition that the number of alleys be reduced to 48, and that an amendment be made to the plans to include provision for a minimum of 336 parking spaces, thus requiring an increase of 20 spaces over the number submitted with the plans. Included also in the recommendation was the specification that the proposed establishment operate a maximum of 16 hours daily, with the closing hour not later than 2 A.M.
In support of this recommendation, certain findings of fact were made and submitted, the most pertinent of which are set forth as follows:
1. The proposed use involved an area of approximately four acres of which approximately one acre or 25% of the total site area, would be occupied by the proposed building. This ratio exceeded that authorized by the ordinance by 5%.
2. The site fronts on Springfield Avenue, a main highway.
3. There is no public transportation to the proposed building site.
4. The building would be of fireproof construction and the standards pertaining to set-backs, noise, lighting and landscaping apparently would be complied with.
5. The tract is located in an industrial zone bounded on the south by undeveloped land; to the west beyond the industrial zone is a business zone in which there are several residences, but which are some 650 feet from the proposed site; to the east, the distance to the nearest residential property line is approximately 1,020 feet, and from the nearest corner of the proposed building to the same point a distance of approximately 1,150 feet; to the north the distance from the nearest corner of the proposed building to the nearest residential property line being approximately 1,130 feet.
After further reciting the possibility that highway construction might reduce some of the area devoted to off-street parking, and that the plaintiff held an option for the purchase of additional land in this event, the board, conditioning its recommendation on the modifications outlined heretofore, concluded that the application
"may be granted without detriment to the public good and it will not substantially impair the intent and purpose of the zone plan and zoning ordinance."
*296 Upon notification of this conditional recommendation the plaintiff consented to the conditions set forth therein, a consent which he has restated in his pleadings.
On August 15, 1960 the township committee considered the matter and rejected the recommendation of the board of adjustment, concluding that
"* * * because of the inadequacy of the parking facilities even as increased by the Board of Adjustment, and the difficulty in furnishing relatively prompt police and fire protection to this site, and the traffic congestions and resulting noise and disturbance that will undoubtedly emanate from this use, that it [the application] should not be granted."
The area in which the plaintiff proposes to erect the structure under consideration is one set aside by the zoning ordinance for industrial purposes; and there is no doubt that the ordinance authorizes the enterprise here contemplated within that zone.
Article X of the township ordinance, relating to permitted uses in business and industrial zones, provides inter alia as follows:
"Section 1. USE. Within any business district no building or premises shall be used except for one of the following purposes:

* * * * * * * *
(c) Place of amusement or assembly or theatre, provided, however, that no amusement park operated for private profit, or circus or similar business shall be permitted in said district."
By virtue of an amendment to article IV of the ordinance, adopted on November 2, 1959, a procedure was established for the application for permission to engage in bowling alley enterprises, and certain standards were enacted to guide the board of adjustment in evaluating individual applications. For purposes of clarity it would be well to set forth this procedure and standard as it appears in the ordinance and is pertinent hereto.

"Section 15. USE OF PROPERTY FOR AMUSEMENT AND RECREATIONAL PURPOSES.
Whenever this zoning ordinance allows property in a particular zoning district to be used for places of amusement, recreation or *297 assembly, all such places * * * where the principal source of entertainment or recreation available to the public is derived from a physical activity of some sort by those who use the facilities offered, such use shall be permitted only after compliance with the following procedure.
An application for any place of amusement, recreation or assembly, having the characteristics above described, such as bowling alleys * * * shall be first made to the Board of Adjustment which shall hear the application in the same manner and under the same procedure as the Board of Adjustment is empowered by law and ordinance to hear cases, and grant exception to the provisions of the Zoning Ordinance. The Board of Adjustment shall, if it takes favorable action upon such application, recommend to the Township Committee that a permit be granted for such use, whereupon the Township Committee may, by resolution approve or disapprove such recommendation, and in case such recommendation be approved, and all statutory and other municipal requirements shall be complied with, the administrative officer in charge of granting permits, shall forthwith issue a permit for the structure and use, subject to such requirements and restrictions as the Township Committee shall impose."
After providing that the board may recommend approval only after a public hearing and a finding that the use would not be detrimental to the public good and would not result in substantial impairment of the intent of the zone plan, and after a requirement that the board make findings of fact and conclusions of law, the section sets forth the following standards:
"1. No building shall cover more than 20% of the lot area.
2. No building shall be nearer than 100 feet to the nearest residential zone, otherwise the yard, off-street parking and other requirements shall be the same as for all other uses permitted in the zone in which the subject property is situated.
3. All buildings must be so constructed that noise within the building shall not be disturbing to adjoining property owners.
4. All lighting sources must be situated so that they do not cause undue glare in adjoining residential properties.
5. The hours of operation of any such amusement, recreational or assembly use must be reasonable, and round-the-clock operation shall be prohibited.
6. A landscaping plan shall be submitted with all applications and where the proposed use adjoins a residential district; (a) screening must be provided along the boundary of the side adjoining a residential district to a minimum depth of 30 feet; (b) any or a *298 combination of the following features may be required to conceal parked vehicles from adjoining residential districts: masonry walls of approved design, dense planting of evergreen shrubs or trees, depression of visible portion of the site below grade or similar protective measures, or fences of any approved design; (c) the integrity of the planting plan shall be preserved by the maintenance or replacement of plantings, and such maintenance and replacement shall be made a condition to the grant of the use by the Board of Adjustment and the Township Committee.
7. That the proposed use shall not create any traffic hazards or any unusual interference with the orderly flow of traffic.
8. All statutory and municipal requirements and regulations shall be complied with and the Board of Adjustment and the Township Committee may impose such other reasonable restrictions as to the structure or use as in its judgment may be required."
Comparing the standards set forth in the ordinance with the findings of fact reflected in the board of adjustment's resolution, it is obvious to the court that the findings and conditions attached to the favorable recommendation conform in all respects with the ordinance, and are sound. Every pertinent specific problem raised by the standards set forth in the ordinance is covered by the findings.
That with which we are here dealing is not a variance but an exception (under section (b) of N.J.S.A. 40:55-39) which, as I read the ordinance here involved, requires the joint approval of the board and the township committee. Our law is settled that the findings of a board of adjustment will not be set aside on judicial review, unless that action is so arbitrary or capricious as to constitute an abuse of discretion. Schmidt v. Board of Adjustment, Newark, 9 N.J. 405 (1952). Similarly, our Supreme Court has stated that the exercise of the discretionary authority of a board of adjustment may not be set aside unless there exists an abuse of the delegated legal discretion. Monmouth Lumber Co. v. Ocean Township, 9 N.J. 64 (1952). It has been stated also that by virtue of section (b) of N.J.S.A. 40:55-39, the defendant township committee had the right to clothe the board of adjustment with recommendatory power only, while reserving unto itself the right of superintendency of the board's action, guided, of *299 course, by the same standards. Schmidt v. Board of Adjustment, Newark, supra. Whether, in view of the record, the township committee circumvented the standards and whether it was guilty of that arbitrariness, or abuse of discretion which would warrant judicial interference, is what the court now must consider.
An examination of the transcript of the proceedings before the board of adjustment, the board's resolution, and the resolution of the township committee makes it clear that the only substantial question here is that of traffic congestion and the effects of possible condemnation of a portion of the property which would otherwise be devoted to parking facilities. Parenthetically, it should be noted that part of the objection contained in the committee's resolution was the inaccessibility of the site and the difficulties that the township possibly could encounter in attempting to furnish prompt police and fire protection. It is conceded that under the theory of Ingersoll v. Village of South Orange, 3 N.J. Misc. 335 (Sup. Ct. 1925), affirmed 102 N.J.L. 218 (E. & A. 1925), and Ridgefield Terrace Realty Co. v. Ridgefield, 136 N.J.L. 311 (Sup. Ct. 1947), the township is required to furnish adequate police and fire service. But the defendant says that it is not the adequacy with which the township committee was concerned, but rather the ability to furnish prompt service due to the geographical location of the property. I cannot agree with the township's theory.
In the first place, the possibility of fire hazards is greatly reduced by the fireproof character of the structure. Secondly, if this thesis be true as it applies here, it would be equally true in its application to any structure which might be erected on the site, the logical result then being that the lands would remain in an unimproved condition and the owners thereof would be deprived of the right to put the premises to the uses authorized by the ordinance itself. Returning to the question of prompt service as opposed to adequacy of services, it would seem to me that *300 the problem of promptness and facility in providing police and fire service actually goes to the issue of the adequacy of those services, and as has already been noted, it is the "plain duty" of a municipality to furnish and provide reasonable, proper and adequate police and fire protection. Ingersoll v. Village of South Orange, supra, and Ridgefield Terrace Realty Co. v. Ridgefield, supra.
As a result of the testimony taken, the board of adjustment found that the ratio of the building area to that of the entire tract exceeded the requirements of article IV, section 15 (as set forth herein) by 5% and the petitioner agreed to reduce the building area to conform to the maximum ratio. An examination of the transcript discloses that the minimal distance from residential zones is more than met, since the distance between the nearest residence in any zone and the property ranges from 550 to 1,150 feet, depending on the direction.
In support of the application, the plaintiff called a Mr. Lief Myhre, a building contractor in charge of the construction of the proposed site, who is also associated with the plaintiff in the enterprise. Mr. Myhre testified that it was the intention to construct a class I building, which he described as the "highest type" building that could be constructed. He stated that with such a building
"* * * if you were to stand outside of the building within two hundred feet you couldn't hear any noise  perhaps even closer."
When queried by the board as to what provisions for noise control were contemplated during the summer months, he explained that the use of air conditioning precluded the construction of windows and, therefore, there would be no seasonal increase of disturbing noises.
Likewise, sufficient control of lighting on the premises was to be provided by the plans. Plaintiff himself testified:
"It [the premises] will be illuminated with types of illumination that provides [sic] shields guiding the light into the parking area. It will be illuminated for the entire time that the bowling alleys *301 are in operation; and it will be adequately illuminated to our satisfaction and to the municipality's satisfaction."
As to the hours of operation, the plaintiff's position before the board can be described best as one of complete deference to local ordinance and policy, although at one point in the proceedings it was pointed out by one of plaintiff's expert witnesses that the lanes would probably be busiest from six o'clock in the evening until midnight.
Thus, it would seem to the court that the requirement of the ordinance pertaining to noise control, hours of operation and lighting, as included in the standard set forth therein, have been adequately met.
We now come to the crux of the matter.
In its resolution disapproving the application, the township committee referred to the possibility that parking and traffic problems might exist (a) due to future condemnation proceedings for the construction of a highway, and (b) due to the absence of public transportation facilities to the site. In addition thereto, it was stated that the location of the premises would raise difficulty in furnishing police and fire protection; and, notwithstanding the noise mutation characteristic of the buildings, it was "only reasonable to consider that some noise is bound to emanate from the parking lot and from the automobiles entering and leaving it at all hours while it is in operation."
Considering the condemnation aspect first, I must conclude that this is an improper consideration and under the facts here should form no part of the basis of the committee's determinations. See Lido Links Homes, Inc. v. Young, 13 Misc.2d 157, 176 N.Y.S.2d 504 (Sup. Ct. 1956), where, in a similar set of facts, the court refused to allow the withholding of a construction permit where an intent to condemn for highway use had been expressed.
"* * * a mere statement of intent, which binds no one, [cannot] compel an owner to maintain his property in an unproductive state for an indefinite period. * * *" (176 N.Y.S.2d, at p. 505)
*302 The township committee takes further issue with the board on the question of parking. The thesis appears to be that if condemnation proceedings are actually commenced on behalf of the State Highway Department, the relocation of the parking area (to be comprised of the additional lands for which the plaintiff holds a purchase option) would bring it 200 feet closer to the residential zone. This I consider to be a tenuous position, since the relocated parking facilities will still be situated some 900 feet from the nearest residence line.
The resolution of the committee rejected the board's finding that the site would provide for adequate parking with the construction of 336 spaces (thus providing for seven spaces for each of the 48 lanes) by merely stating:
"The committee feels that even seven parking spaces per lane might be insufficient inasmuch as there is no public transportation to the site, and that should the application be granted, that parking facilities ought to be provided at the rate of ten spaces per lane."
There is no substantial basis in the record to support this conclusion.
Mr. Loren T. MacDonald, a sales engineer, who was employed in the business of manufacturing and installing bowling equipment, testified as follows:
"Our feeling in an area of this type  our feeling, based on experience  using a figure roughly of five to six cars per bowling lane, * * * will provide adequate parking."
Passing to the question of traffic congestion and the noise attending the operation of automobiles, I cannot concur in the conclusions reached by the committee. In the first place, the site fronts on a wide, well-traveled main artery, at distances of approximately 550-1,150 feet from the nearest residences. In an area zoned for industrial purposes, already containing industrial sites, it is difficult to see how the additional vehicles will create any significant increase in noise, if at all. Further, there was not one *303 iota of testimony at the public hearing which would justify the conclusion reached.
In arriving at a determination in this matter, it is to be presumed that the township committee exercised its discretion properly, and the plaintiff cannot succeed in this action unless it is clear that the committee's determination was unreasonable. Wharton Sand & Stone Co. v. Montville Tp., 39 N.J. Super. 278 (App. Div. 1956). However, on the state of the entire case as reviewed here, I hold that there was an unreasonable determination made by the municipal defendant and that the plaintiff's application should have been approved.
Accordingly, it is ordered that the township committee vacate its resolution denying the plaintiff's request for relief, and that it direct the defendant building inspector to issue a building permit to the plaintiff.