130 N.J. Super. 164 (1974)
325 A.2d 851
JOHN J. BRUNETTI, PLAINTIFF,
v.
MAYOR AND COUNCIL OF THE TOWNSHIP OF MADISON AND PLANNING BOARD OF THE TOWNSHIP OF MADISON, DEFENDANTS.
Superior Court of New Jersey, Law Division.
August 27, 1974.
*165 Mr. Harold G. Smith for plaintiff (Messrs. Wilentz, Goldsmith & Spitzer, attorneys; Mr. John A. Hoffman on the brief).
Mr. Richard F. Plechner for defendants Mayor and Council of the Township of Madison.
*166 Mr. Thomas Norman for defendant Planning Board of the Township of Madison.
FURMAN, J.S.C.
Plaintiff moves for summary judgment in litigation challenging the denial of his application for a zoning variance. The Madison Township zoning ordinance of 1970 and the amended zoning ordinance of 1973 were struck down as unconstitutional in Oakwood at Madison, Inc. v. Madison Tp., 117 N.J. Super. 11 (Law Div. 1971), certif. granted 62 N.J. 185 (1972), on remand 128 N.J. Super. 438 (Law Div. 1974). Both trial court judgments were stayed pending appeal.
On September 11, 1972 plaintiff sought a zoning variance for a 1256-unit garden apartment complex on 127 acres of vacant land, approximately 65 acres in R-80 Residential, approximately 38 acres in S-D Special Development and approximately 23 acres in M-1 Light Industrial. Other holdings of his surround this 127-acre parcel, which is west of Route 9 in a sparsely developed section of the township.
The board of adjustment recommended the use variance and incidental bulk variances on December 19, 1972. There were no objectors at the board hearings. The Old Bridge Civic Association through a spokesman favored approval. The mayor and council failed to act on the board recommendation within the statutory 60-day period, as extended several times, amounting to a denial pursuant to N.J.S.A. 40:55-39.1. Plaintiff brought this prerogative writ action on July 23, 1973.
The amended zoning ordinance was adopted, effective October 1, 1973. Plaintiff's 127-acre parcel was rezoned into a Planned Unit Development zone of over 600 acres. Garden apartments, townhouses and high rise apartments are permitted subject to housing unit density limitations and in proportions to single-family houses, according to total acreage within a planned unit development and other factors. PUD is optional. If not availed of, the governing zoning remains that in the 1970 ordinance.
*167 Plaintiff rejects the PUD alternative and presses for summary judgment on the single issue whether the statutory denial of his variance application was unreasonable and therefore invalid. Denial through inaction by the mayor and council, not approval after hearings by the board of adjustment, carries with it the presumption of validity. Wickatunk Village, Inc. v. Marlboro Tp., 118 N.J. Super. 445, 449, 450 (Ch. Div. 1972); cf. Wharton Sand & Stone Co. v. Montville, 39 N.J. Super. 278, 283 (App. Div. 1956), and Nalitt v. Millburn, 66 N.J. Super. 292, 303 (Law Div. 1961).
To reverse the statutory denial this court must determine that it was unreasonable under the evidence not to conclude that a special reason was established for the variance and that the variance "can be granted without substantial detriment to the public good and will not substantially impair the intent and purpose of the zone plan and zoning ordinance." N.J.S.A. 40:55-39(d); Shell Oil Co. v. Shrewsbury Bd. of Adj., 64 N.J. 334 (1974), rev'g 127 N.J. Super. 60 (App. Div. 1974).
The special reason urged by plaintiff is the need for moderate-income multi-family housing within the township and region. The board of adjustment found that such need exists and that it would be served by plaintiff's project, relying upon expert opinion, county and township population projections, the low vacancy rate of present garden apartments within the township, plaintiff's estimates of his rentals, which would be within reach of moderate-income households, and the general knowledge of the board members. In addition, the adoption of a rent control ordinance effective July 16, 1973, based upon a rental housing shortage within the township, supports the board's finding.
No reported decision has held that a need for private multi-family housing constitutes a special reason justifying a zoning variance. DeSimone v. Greater Englewood Housing Corp. No. 1, 56 N.J. 428 (1970), so categorizes semi-public multi-family housing, at least under the circumstance that *168 it would relieve and replace substandard housing in ghetto areas.
A series of other precedents recognizes uses in furtherance of the general welfare as special reasons within the statute. Kunzler v. Hoffman, 48 N.J. 277 (1966) (private hospital for emotionally disturbed); Kramer v. Sea Girt Bd. of Adj., 45 N.J. 268 (1965) (fireproof hotel to replace dangerous structure); Burton v. Montclair, 40 N.J. 1 (1963) and Black v. Montclair, 34 N.J. 105 (1961) (extensions of private secondary and elementary schools); Andrews v. Ocean Tp. Bd. of Adj., 30 N.J. 245 (1959) (parochial school to serve region), and Wickatunk Village, Inc. v. Marlboro Tp., supra (sewage treatment plant for mobile home park).
Defendants argue that if the need for moderate income multi-family housing is held to be a special reason, zoning use restrictions would break down in every zone. That is not so. The so-called negative criteria, no substantial detriment to the public good and no substantial impairment of the zone plan, must also be met.
The board of adjustment's finding of a need within the township for moderate-income multi-family housing is inescapable on the record. A need for low and moderate-income housing constitutes a special reason justifying a zoning variance, whether served by semi-public housing as in DeSimone or by private housing as proposed by plaintiff. The mayor and council were unreasonable in not so concluding.
As to the negative criteria, plaintiff established them overwhelmingly and without rebuttal. No threat to the public good is discernible. This section of the township is sparsely developed. The terrain is suitable for garden apartments. Much natural woodland would be preserved. There would be ample parking and recreational areas. Water and electric utilities and sanitary sewer facilities are available in the immediate vicinity to hook up to. A storm drainage system is feasible. No adverse effect on Route 9 traffic is foreseen from the standpoint of safety or congestion. The widening *169 of Route 9 in this area is planned by the State Department of Transportation.
Both the township master plan and the amended zoning ordinance, in setting up the optional PUD zone, provide for multi-family housing at this site. To conclude that a garden apartment complex would substantially impair the intent and spirit of the zone plan is untenable.
In the approval of various bulk variances the board of adjustment determined that restrictions applicable to other permitted uses but not to multi-family housing should not be enforced, in view of its approval of the use variance. DeSimone, supra 56 N.J. at 443, 444, is in accord. Finally, restrictions on the number of bedroom units were deleted in the 1973 zoning ordinance amendment; the variance relative to such restrictions is therefore moot.
Judgment is rendered directing the governing body to grant plaintiff's application for a zoning variance.