180 N.J. Super. 248 (1981)
434 A.2d 659
DIANE LIZAK AND JOHN SOLANO AND MARGE SOLANO, PLAINTIFFS,
v.
MANUEL AND C. FARIA, TOWNSHIP OF WOODBRIDGE BUILDING DEPARTMENT AND ZONING BOARD OF ADJUSTMENT, DEFENDANTS. MANUEL AND C. FARIA, PLAINTIFFS,
v.
DIANE LIZAK, JOHN AND MARGE SOLANO, TOWNSHIP OF WOODBRIDGE MUNICIPAL COUNCIL, TOWNSHIP OF WOODBRIDGE BUILDING DEPARTMENT, DEFENDANTS.
Superior Court of New Jersey, Chancery Division Middlesex County.
Decided May 29, 1981.
*250 William W. Hart, Jr. for Diane Lizak and John and Marge Solano.
James P. Nolan for Manuel and C. Faria (Venezia & Nolan, attorneys).
Robert F. Dato for Township of Woodbridge Building Department and Township of Woodbridge Municipal Council (Dato, Kracht & Gill, attorneys).
*251 Francis J. Reilly for Township of Woodbridge Zoning Board of Adjustment.
COHEN, J.S.C.
This case presents a number of questions about the effect of a statutory grant of a variance by inaction, that is, by failure of prompt board of adjustment decision. Mr. and Mrs. Faria own a mixed-use building in Woodbridge Township. They wished to enlarge the building in a way that would violate dimensional limitations of the zoning ordinance. They therefore applied to the Woodbridge Board of Adjustment for variances from the front, side and rear yard set-back requirements.
The Farias' application was heard by the board on September 6, 1979. Neighbors strongly objected. On September 27, 1979, the board unanimously voted to deny the application. However, it never went on to adopt the statutorily required resolution setting forth its findings of fact and ultimate conclusions.[1] In June 1980 communications opened between the Farias' attorney and the township attorney as to the effect of the incomplete proceedings. They agreed that the board's failure to adopt a resolution converted the oral vote to deny into the grant of the variance.[2] On July 10, 1980 the municipal clerk certified that a variance had been granted and, on July 11, the municipal construction official issued a building permit. The neighbors knew on July 16 that the permit had been issued. It is unclear whether they knew even earlier that something was amiss. A councilman testified that the most active objecting neighbor communicated her concern to him as early as the July 4 weekend. That neighbor testified she was aware that trees were being felled in early July and knew by July 9 that the Farias had applied for a building permit but had not yet received it.
*252 On July 21 construction began. On August 5 the municipal council retained outside counsel to advise them whether they could entertain an appeal from the result of the inaction of the board. On August 7 the neighbors filed a petition with the council seeking a hearing to determine what could be done. A further communication was sent the council on August 19. Mr. Faria knew in early August that the council had hired an attorney to advise on the matter and that the neighbors were seeking corrective council action. He continued building until stopped by this court on August 20. It is apparent that the neighbors began in late July to seek a way to assert their rights. Without counsel and with conflicting signals from council members and township attorneys, they made a number of false starts. Their activity was not in secret, however. And, it began even before the period elapsed for appeal to the board of adjustment from decisions of the construction official. See N.J.S.A. 40:55D-72(a). In all the circumstances, their activity was reasonably prompt and sufficiently public.
The council properly treated the neighbors' communications as notices of appeal from the "determination" of the board of adjustment and held a hearing in September 1980.[3] It denied the variance and adopted a detailed resolution setting forth its reasons.
Now before the court are two consolidated actions. In one of them the Farias seek a ruling either that their variance was not appealable or not appealed in time, or that the Council's denial was arbitrary, or, finally, that their proceeding in reliance upon the apparently regular building permit protects them from untimely later occurrences. The objecting neighbors also brought suit, seeking rulings that their appeal was timely, that the variance was properly denied and that the partial construction must be removed.
*253 An examination of the enabling legislation and local ordinance will help. Before enactment of the Municipal Land Use Law (L. 1975, c. 291; N.J.S.A. 40:55D-1 et seq.) a board of adjustment that failed to act on a variance within 60 days after hearing or 90 days after application was deemed to have denied it.[4]N.J.S.A. 40:55-45 (repealed). That rule did little to encourage boards to tackle difficult or controversial applications. Planning board inaction had a different effect. Failure to take action within 45 days of submission of a final subdivision plat constituted approval or, in weak-board municipalities,[5] favorable referral to the governing body. N.J.S.A. 40:55-1.18 (repealed). The purpose was to encourage prompt consideration of applications. Of course, an applicant before either board could waive the time limit or agree to an extension.
The Municipal Land Use Law adopted the approval-by-inaction approach for municipal agencies that hear zoning and planning matters. A planning board that fails to grant or deny preliminary approval of a site plan or subdivision within 45 or 95 days, depending on size, is deemed to have granted preliminary approval. N.J.S.A. 40:55D-46(c), 46.1(b), 47 and 48(c). See also § 50(b) as to final approvals. A board of adjustment that fails to decide an application for development or an administrative appeal within 120 days is deemed to have acted favorably on it. N.J.S.A. 40:55D-73(b) and 76(c). A governing body that fails to act within 95 days on an appeal from a use variance grant, or such other appeal as the local ordinance permits, is deemed to have affirmed the board action. N.J.S.A. 40:55D-17(a) and (c). As under earlier law, an applicant can waive or agree to extend the time limits for action.
Appeal to the governing body must be taken within ten calendar days of first newspaper publication of a notice of the *254 board's decision. The statute makes publication the responsibility of the applicant, unless the local ordinance designates a particular municipal officer to do it. But, the statute makes it clear that such a designation does not bar publication by the applicant. N.J.S.A. 40:55D-10(i). Woodbridge's ordinance leaves publication to the applicant.
The decision of a municipal agency must be in writing and must include findings of fact and resulting conclusions. N.J.S.A. 40:55-10(g). The statute does not plainly say what happens if a municipal agency fails to memorialize in writing its findings and conclusions. In early 1979, a trial court decided Gridco v. Hillside Tp. Zoning Bd., 167 N.J. Super. 348 (Law Div. 1979). There the board had timely voted to deny[6] a variance to permit improvement of a restaurant. The memorializing resolution, however, was adopted well beyond the 120-day limit. The court held that, despite the vote to deny, the board's failure to adopt a timely resolution was equivalent to a failure to decide and thus become a grant of the application.
Questions whether such a result was intended by the Legislature were soon resolved[7] by chapter 216 of the Laws of 1979, a collection of amendments prompted by experience with the Municipal Land Use Law. Among them was new language supplementing the provisions that governed hearings and decisions of municipal agencies. N.J.S.A. 40:55D-10. The new language focused on the situation in which an agency makes its decision by voting at a meeting held within the last 45 days of the time period that limits its action. Such a decision is timely, according to the amendment, if, within 45 days of the meeting, *255 the agency adopts the required resolution, even if adoption is beyond the original time limit. Failure to adopt the resolution within those 45 days, however, would "result in the approval of the application for development, notwithstanding any prior action thereon." N.J.S.A. 40:55D-10(g).
The Legislature thus adopted and ratified Gridco's rule that failure to adopt a memorializing resolution equals failure to decide and, therefore, approval. If the 1979 Legislature did not believe that to be so, it would not have needed to create the special time extension for a resolution after a board vote taken near the deadline for action. And, there was no point in saying that failure to memorialize within the extended time resulted in approval unless the same result came from failure to memorialize in the usual time.
Issues not reached by Gridco or the 1979 amendment were (1) whether approvals by inaction could be appealed like other variance grants, and (2) if they could be, what are the allowable time limits.
The statute says that board of adjustment inaction "shall constitute a decision favorable to the applicant." N.J.S.A. 40:55D-73(b). It deems planning board inaction a grant of subdivision or site plan approval. N.J.S.A. 40:55D-46(c), 46.1(b), 47, 48(c) and 50. It makes governing body inaction on an appeal "a decision affirming the action of the board." N.J.S.A. 40:55D-17(c). Plainly, the Legislature intended such approvals to have the same effect as ordinary, procedurally regular decisions. But, there is no reason to believe the Legislature meant to prefer such approvals by insulating them from governing body and judicial review.[8] The decision a board makes purposely after conscientious deliberation may be appealed. A decision reached by calculated inaction or inadvertent inattention does not deserve greater respect. Even more important is the fact that the applicant is only one of the parties affected by the *256 outcome of his variance application. Neighbors and members of the public are vitally interested, too. The zone plan itself can be permanently impaired. When creating approvals by inaction, therefore, the Legislature could not have totally ignored those legitimate concerns and made such approvals final and proof against appeal.
What is subject to review by the governing body? Surely, it must decide whether a grant by inaction in fact occurred. Perhaps that question is one that might properly be raised in court. But, the governing body may have to decide it, too, in order to know what sort of decision is before it on appeal. Beyond that, may the governing body review the substance of the board "decision"? Under prior law, two trial courts held that governing body denials by inaction were judicially reviewable as to substance. Wickatunk Village, Inc. v. Marlboro Tp., 118 N.J. Super. 445 (Ch.Div. 1972); Brunetti v. Madison Tp., 130 N.J. Super. 164 (Law Div. 1974). That position was disapproved by Snyder-Westerlind v. Atlantic Highlands, 134 N.J. Super. 459 (App.Div. 1975). That case further indicates that remand may be the only course for a governing body or court to take where the board failed even to hold a hearing. That course may weaken the statutory pressure on a slothful agency, but the other choices seem to be (a) review without information and (b) no review at all. Both have their obvious disadvantages. I hold that a review of substance may be undertaken by a governing body or court in a case in which the board held a hearing and produced a reviewable record. Whether to remand in a case of total inaction is not an issue I have to decide.
When would an appeal be timely? The statute gives ten days from publication of a notice of the decision. N.J.S.A. 40:55D-17(a). Where a notice is never published, it follows that the ten-day period never begins to run. But that is unjust, the applicants argue, in instances where the objectors were present *257 to witness the board vote. Their thesis is flawed, however, where, as here, the vote witnessed by the objectors was one that denied the variance. Surely, actual knowledge that the board had ruled in their favor can not sensibly be held to alert the objectors to the need to appeal within ten days or any other period.
Beyond that, however, the statute plainly counts the time for appeal only from publication.[9] The statute declines to deal with the slippery problems of measuring actual notice and adopts a simple, objective and verifiable test that will govern all potential appellants. Both the statute and the Woodbridge ordinance oblige an applicant to publish notice of a board decision in his favor. It is therefore up to him to protect his victory by triggering the time for appeal. If inaction constitutes an appealable decision, the same publication rules should apply to it as to a procedurally correct determination.
Foltz v. Zoning Hearing Board, 13 Pa.Cmwlth. 309, 318 A.2d 410 (1974), appears at first glance to be contrary. It, too, dealt with the question when an appeal period runs from a zoning agency decision by inaction. The Pennsylvania court held that an appeal could not await publication. Rather, the appeal time began to run on the day after expiration, without action, of the agency's period to decide.
A major element in Foltz was that under the Pennsylvania statute, unlike ours, only the agency could publish the statutory notice. An agency so neglectful as not to decide an application, the court said, could not be counted on to publish notice of its inaction. Thus, an applicant might never be able to securely rely on his statutory approval. In these circumstances the Foltz court put the burden of vigilance on the objectors. Under New Jersey's statute it would not have done so. In New Jersey a statutorily approved application can be secured against remote *258 appeal by the notice to be published by the applicant. Objectors, on the other hand, who apparently prevailed before the board, should not lose their rights in ignorance engendered by the applicant's failure to publish.
The neighbors' time to appeal is not unlimited. Even if publication never takes place, they must act within a reasonable time, a time measured by the nature of their knowledge and actions and those of the applicant. The outer limits of the concept need not be here explored. It is plain that the neighbors responded as soon as they were aware the Farias were doing what the board of adjustment had ruled they could not do. If their actions were initially unfocussed, so were those of the township officials and the Farias. Within two weeks of the start of construction the Farias knew the neighbors were intently trying to get the township to stop them. That construction progressed so far in such a short time was due to an initial burst of building activity not reasonably to be anticipated from people from whom not a peep had been heard for almost ten months.
The Farias' July and August activity relied upon a building permit that was issued before the neighbors initiated their appeal to the township council. The permit was properly issued but it was subject to appeal for 20 days under N.J.S.A. 40:55D-72(a). The "variance" underlying the permit was itself still subject to appeal for all of the reasons explained in this opinion. Either appeal automatically stays any proceedings under the permit. N.J.S.A. 40:55D-75. So, although the Farias may have relied on the regularity of the permit, their reliance can not convert the permit into something not subject to administrative and judicial review. They could not reasonably have relied upon the inviolability of municipal actions that were still subject to appeal. The municipal attorney's opinion and the construction official's action assured the Farias that a permit was issuable, but not that the variance was not appealable. As to that matter, they took their chances. See Donadio v. Cunningham, 58 N.J. 309 at 322-23 (1971).
*259 Since the objecting neighbors timely referred an appeal of the matter to the township council, the Faria variance was properly before that body for review. N.J.S.A. 40:55D-17(a). The proper scope of that review has not yet been decided in a reported case. Perhaps, a governing body may not reverse a board decision regularly arrived at unless it finds that decision so arbitrary and capricious as to amount to an abuse of discretion. Evesham Tp. Zoning Bd. v. Evesham Tp., 176 N.J. Super. 503 (App.Div. 1980). To the contrary, see Kessler v. Bowker, 174 N.J. Super. 478, 489 (App.Div. 1979). But, when dealing with a statutory grant resulting from an incomplete denial, is it the unreasoned grant that is presumed correct, or the attempted denial? And, what if the board never heard the application at all?
Two trial court opinions under prior law gave local determinations by inaction the same presumption of correctness that attaches to intentional decisions. Wickatunk Village, Inc. v. Marlboro Tp., 118 N.J. Super. 445 (Ch.Div. 1972); Brunetti v. Madison Tp., 130 N.J. Super. 164 (Law Div. 1974). The Appellate Division vigorously disagreed in Snyder-Westerlind Corp. v. Atlantic Highlands, 134 N.J. Super. 459 (App.Div. 1975), but did not suggest another approach.
It is unnecessary to decide if any of those cases represents the current state of the law. That is because there is no reasonably conceivable standard of review that could legitimize the grant of a variance to the Farias on the evidence that was produced before the board. There is no point reciting the proofs. Suffice to say that there was no evidence at all to show practical difficulties or hardship, to satisfy the negative criteria or, ultimately, to justify the relief the Farias sought. N.J.S.A. 40:55D-70. The board of adjustment saw that and voted to deny the variance. The township council saw it, too, and voted to deny the variance. It is equally plain to this court.
*260 Since the statutory variance grant was appealable, was appealed in time, and was properly overturned by the township council, and since the premature partial construction of the building addition was not based upon justifiable reliance on any municipal action, judgment will be entered as follows: The variance will be declared properly denied and the building permit properly revoked. The interim order restraining the local directive to demolish will be vacated and the Farias will be ordered to demolish forthwith.
NOTES
[1] N.J.S.A. 40:55D-10(g).
[2] Gridco v. Hillside Tp. Zoning Bd., 167 N.J. Super. 348 (Law Div. 1979).
[3] Woodbridge Township opted to provide in its ordinance for appeal to the governing body of bulk variance grants, as authorized by N.J.S.A. 40:55D-17(a).
[4] See, also, N.J.S.A. 40:55-39.1 (repealed) imposing similar time limits on governing body action on use variance recommendations.
[5] N.J.S.A. 40:55-1.14 (repealed).
[6] The vote was actually 3-2 to grant the application, short of the required number and thus equivalent to a denial. N.J.S.A. 40:55D-70(d).
[7] Questioners would have found support for Gridco in Glaback v. Sandelle, 132 Vt. 490, 321 A.2d 1 (Sup.Ct. 1974), and Humble Oil & Refining Co. v. East Lansdowne, 424 Pa. 309, 227 A.2d 664 (Sup.Ct. 1967). But see Aurentz v. Little Egg Harbor Tp. Plan. Bd., 171 N.J. Super. 135 (App.Div. 1979); Heisterkamp v. Zoning Hearing Board, 34 Pa.Cmwlth. 539, 383 A.2d 1311 (1978).
[8] See Monroeville v. Foltz, 5 Pa.Cmwlth. 304, 290 A.2d 269 (1972).
[9] The statute seems to make this so even if the objector has earlier requested and received a copy of the decision. N.J.S.A. 40:55D-17(a) and (g).